2005 WY 119

**Leroy CARABAJAL, Appellant
(Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. 04–248.

Supreme Court of Wyoming.

Sept. 16, 2005.

Representing Appellant: Rick L. Koehmstedt of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Leroy Carabajal appeals from an Order Denying Benefits and Granting Petition to Modify issued by the Office of Admin-

istrative Hearings (OAH). Upon our review, we find that the hearing examiner erred as a matter of law in failing to apply the second compensable injury rule in determining whether Mr. Carabajal was entitled to workers' compensation benefits. Accordingly, we reverse and remand for reconsideration.

### ISSUES

[¶ 2] We restate the issues presented by Mr. Carabajal as follows:

1. Did the hearing examiner err in failing to apply the second compensable injury rule?

The Division frames the issues as:

1. Whether consideration of the second compensable injury rule is inappropriate because it is a new theory raised for the first time on appeal?
2. Whether the Hearing Examiner's Order Denying Benefits and Granting Petition to Modify is supported by substantial evidence?

### FACTS

[¶ 3] The facts of this case are not disputed. On August 10, 1977, Mr. Carabajal injured his lower back while using a sledgehammer to clean coal ash from a chute for his employer, Pacific Power & Light. Mr. Carabajal sustained a herniated disc at the L5–S1 level that required surgery. He received workers' compensation benefits from 1977 until 1980. Mr. Carabajal returned to work and did not seek, or receive, additional benefits until 2002.

[¶ 4] In 2002, Mr. Carabajal experienced low back pain while walking. He was not at work at the time. He sought medical treatment and an MRI revealed scar tissue and a herniated disc at L5–S1. Mr. Carabajal had microdiscectomy surgery to repair the herniated disc, but problems with his back persisted. He continued receiving medical treatment and underwent a fusion surgery in 2003. He has been unable to return to work since the surgery.

[¶ 5] Prior to the 2003 surgery, Mr. Carabajal sought payment of his medical bills and temporary total disability benefits (TTD) from the Division. On November 20, 2002, the Division issued its final determination regarding Mr. Carabajal's claims. The Division allowed payment of medical benefits but denied TTD benefits. The Division cited Wyo. Stat. Ann. § 27–14–605(a) and (c) (LexisNexis 2001) as authority for its decision.[1] Mr. Carabajal timely objected to the Division's determination and requested a contested case hearing.

[¶ 6] In preparation for the hearing, the parties deposed Dr. Joseph Sramek, Mr. Carabajal's treating physician, regarding the relationship between the 1977 injury and the 2002 injury. After reviewing Dr. Sramek's testimony, the Division concluded that it had erroneously paid Mr. Carabajal's medical bills relating to his 2002 injury. On March 6, 2003, the Division filed an Application for Modification of Benefits Due to Mistake pursuant to Wyo. Stat. Ann. § 27–14–605(a) in an attempt to correct the error and recoup the medical payments it had made.

---

1. Wyo. Stat. Ann. § 27–14–605 (LexisNexis 2001) provides:

(a) If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for additional benefits or for a modification of the amount of benefits on the ground[s] of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud. The division may, upon the same grounds and within the same time period, apply for modification of medical and disability benefits to a hearing examiner or the medical commission, as appropriate.

(b) Any right to benefits shall be terminated and is no longer under the jurisdiction of this act if a claim for any benefit is not filed with the division within the four (4) year limitation prescribed under subsection (a) of this section.

(c) A claim for medical benefits which would otherwise be terminated under subsection (b) of this section and barred under W.S. 27–14–503(a) and (b) may be paid by the division if the claimant:

(i) Submits medical reports to the division substantiating his claim;

(ii) Proves by competent medical authority and to a reasonable degree of medical certainty that the condition is directly related to the original injury; and

(iii) Submits to an examination by a health care provider selected by the division and results of the examination validate his claim.

[¶ 7] On April 1, 2003, a contested case hearing was held to address the denial of TTD benefits and the Division's application for modification. The OAH affirmed the Division's denial of TTD benefits on the basis that Mr. Carabajal had failed to prove he sustained a work-related injury as defined by Wyo. Stat. Ann. § 27–14–102(a)(xi) [2] and that Mr. Carabajal had failed to file his claim within the four-year time limitation required by Wyo. Stat. Ann. § 27–14–605(a). The OAH also approved the Division's application for modification based on Mr. Carabajal's failure to prove his condition was directly related to the original injury under Wyo. Stat. Ann. § 27–14–605(c). Mr. Carabajal filed a petition for review with the district court. The district court affirmed in part and reversed in part the decision of the OAH. The district court held, "[t]he decision of the Hearing Examiner is affirmed to the extent that it allows the Division to cease further benefits. To the extent that the order grants the Division authority to recoup any previously paid benefits, the order is reversed as being without authority." This appeal followed.

### STANDARD OF REVIEW

[¶ 8] When reviewing administrative decisions, we are limited to a determination of the factors specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

We have also stated:

"The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which our review authority is plenary. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law."

*Bailey v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2002 WY 145, ¶ 9, 55 P.3d 23, 26 (Wyo.2002) (internal citations omitted) (quoting *State ex rel. Workers' Safety and Compensation Div. v. Garl*, 2001 WY 59, ¶ 9, 26 P.3d 1029, 1032 (Wyo.2001)). We review this case as if it had come directly to this Court from the agency and do not afford any deference to the district court's decision. *Id.*, ¶ 6.

---

**2.** Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2001) provides, in pertinent part, that:

"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

## DISCUSSION

[¶ 9] Mr. Carabajal contends the second compensable injury rule is applicable to his case and that the hearing examiner erred by analyzing his case pursuant to Wyo. Stat. Ann. § 27–14–605. He asserts that the improper application of Wyo. Stat. Ann. § 27–14–605 subjected him to a four-year statute of limitations and a heightened burden of proof regarding his claim. Mr. Carabajal contends his claim is timely and would satisfy the appropriate burden of proof if analyzed under the second compensable injury rule.

■ [¶ 10] We have previously recognized a significant distinction between resolution of a benefit claim pursuant to the second compensable injury rule rather than Wyo. Stat. Ann. § 27–14–605. "Under the second compensable injury rule, a worker who has received a compensable injury and received benefits for that injury can, regardless of the passage of time, receive more benefits for that compensable injury without meeting either of the time limits or increased burden of proof found in Wyo. Stat. Ann. § 27–14–605 (LexisNexis 2001)." *Yenne–Tully v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2002 WY 90, ¶ 10, 48 P.3d 1057, 1062 (Wyo.2002) (*Yenne–Tully II* ).

[¶ 11] At the hearing, the parties presented two issues for resolution: (1) whether Mr. Carabajal was entitled to temporary total disability benefits for his 2002 injury; and (2) whether the Division's Application for Modification of Benefits Due to Mistake should be granted. The OAH made the following conclusions of law:

5. Carabajal has failed to met [sic] his burden on the issue of TTD benefits. The evidence is clear that Carabajal did not receive benefits of any type from the Division from at least 1980 through September 2002.... Carabajal did not apply for additional benefits within four years of his last paid benefits. TTD benefits are therefore denied.

. . .

8. Wyo. Stat. Ann. § 27–14–605(a) (LEXIS 2002) provides the Division or an employee can apply for modification within four years from the date of the last payment of benefits due to an increase or decrease of incapacity or due to mistake or fraud. Wyo. Stat. Ann. § 27–14–605(b) (LEXIS 2002) provides that any right to benefits under subsection (a) terminates if a claim is not filed within the four-year limitation period. Wyo. Stat. Ann. § 27–14–605(c) (LEXIS 2002) provides claims for medical benefits, which would otherwise be terminated under subsection (b), may be paid if the claimant proves by competent medical authority and to a reasonable degree of medical certainty that the condition is directly related to the original injury. The deposition testimony of Dr. Sramek clearly indicated that Carabajal's current back condition could not be directly related to the original injury in 1977. The Division made a mistake when it awarded medical benefits in November 2002. The Application for Modification is therefore granted.

In denying Mr. Carabajal's claim for benefits and in granting the Division's modification, the hearing examiner relied upon the four-year statute of limitations set forth in Wyo. Stat. Ann. § 27–14–605(a) and the burden of proof described in Wyo. Stat. Ann. § 27–14–605(c)(ii).

■ [¶ 12] We have long recognized that an industrial accident can give rise to more than one compensable injury. *Baldwin v. Scullion*, 50 Wyo. 508, 62 P.2d 531, 539 (1936). We generally refer to this principle as the "second compensable injury rule." The second compensable injury rule applies when "an initial compensable injury ripens into a condition requiring additional medical intervention." *Yenne–Tully v. State ex rel. Workers' Safety and Compensation Div.*, 12 P.3d 170, 172 (Wyo.2000) (*Yenne–Tully I* ).

[¶ 13] In *Baldwin*, we discussed the basic rationale behind the second compensable injury rule:

Medical science and diagnosis have advanced with well-nigh miraculous strides in the last decade or two, yet they cannot at this time, and probably never will be able to foretell accurately the reaction of every

particular human body to every particular hurt it may sustain in industrial employment. Under these circumstances it seems to us palpably unjust to the employee to deny him compensation because he has tried to keep his place on the employer's pay roll by doing his regular work and then has found that conditions produced at the time of the accident, and which medical science could not recognize or whose final consequences it could not forecast, have gradually and ultimately produced a compensable injury. We do not think the language employed in the law by our state legislature was reasonably intended to produce any such result.

*Baldwin*, 62 P.2d at 539. We have since applied the rule in a variety of cases. *See, e.g., Yenne–Tully I*, 12 P.3d at 172; *Pino v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 996 P.2d 679, 684–85 (Wyo. 2000); *Matter of Krause*, 803 P.2d 81, 82 (Wyo.1990); *Pacific Power & Light Co. v. Rupe*, 741 P.2d 609, 610 (Wyo.1987); *State ex rel. Wyoming Workers' Compensation Div. v. Malkowski*, 741 P.2d 604, 605 (Wyo.1987); and *In re Barnes*, 587 P.2d 214, 218–19 (Wyo. 1978). In asserting that the hearing examiner erred in failing to apply the second compensable injury rule, Mr. Carabajal relies primarily upon our decisions in *Pino* and *Yenne–Tully I*.

[¶ 14] In *Pino*, the claimant had incurred a work related back injury in 1995. *Pino*, 996 P.2d at 681. He was diagnosed with a disc bulge at L4–L5 and L5–S1. He was treated conservatively and returned to work on a part-time basis within six months. He commenced full-time employment shortly thereafter. In 1997, Pino coughed while getting out of the shower at home rupturing the disc at the site of the previous bulge. He sought additional workers' compensation benefits. *Id.* After a contested case hearing, the hearing examiner entered his decision denying Pino benefits on the basis that he "had failed to establish that the herniated disc was causally related to the work-related injury in 1995." *Id.* at 682. The hearing examiner concluded that although Pino's 1995 injury predisposed him to a subsequent disc herniation, it was the cough in 1997 which caused the herniation. *Id.* at 685. In

reviewing the decision of the hearing examiner we noted:

The thrust of the hearing examiner's disposition is clear; he ruled that the cause of the herniation was a cough that occurred at home not the work place. Yet, there is nothing in the second compensable injury rule that attributes any significance to the place where the worker happened to be when the injury manifested itself nor is any triggering event required. Other cases simply report the increasing severity of the injury over time that ultimately required surgery. In *Evenson*, the triggering event was a slip and fall at home.

We have ruled in a different medical context that the causal connection between an accident or condition at the workplace is satisfied if the medical expert testifies that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury. *Claim of Taffner*, 821 P.2d 103, 105 (Wyo.1991). We do not invoke a standard of reasonable medical certainty with respect to such causal connection. *Kaan v. State ex rel. Wyoming Workers Compensation Div.*, 689 P.2d 1387, 1389 (Wyo.1984) (*citing Jims Water Service v. Eayrs*, 590 P.2d 1346 (Wyo.1979)). Testimony by the medical expert to the effect that the injury "most likely," "contributed to," or "probably" is the product of the workplace suffices under our established standard. *Kaan*, 689 P.2d at 1389. We have quoted above the mixed findings of fact and conclusions of law pursuant to which the hearing examiner acknowledged that it was the opinion of the doctors that the work injury in 1995 weakened the disc in Pino's back and predisposed him to herniation. Further, the hearing examiner acknowledged that the evidence established that the injury in 1995 predisposed Pino to the possibility of disc herniation. The hearing examiner then ruled, however, that the cause of the herniated disc was the cough at home. The hearing examiner made no reference to the law surrounding a second compensable injury.

*Id.* We reversed the decision of the hearing examiner for failure to apply the second compensable injury rule to Pino's claim.

[¶ 15] In *Yenne–Tully I*, the claimant suffered a compensable back injury in 1989. *Yenne–Tully I*, 12 P.3d at 171. He received benefits from the Division for approximately two years. In 1997, Yenne–Tully awoke in pain due to a herniated disc. *Id.* Due to the perceived lack of a work-related triggering event for the 1997 injury, the hearing examiner applied the burden of proof set forth in Wyo. Stat. Ann. § 27–14–603(a) regarding injuries which develop over a substantial period of time. *Id.* at 172. We recognized that the second compensable injury rule was applicable in Yenne–Tully's case. *Id.* We reversed and remanded for reconsideration in light of the second compensable injury rule, finding it error to invoke an inappropriate burden of proof. *Id.* at 173.

[¶ 16] In this case, the evidence is undisputed. Mr. Carabajal suffered a herniated disc at the L5–S1 level in 1977 and received workers' compensation benefits until approximately 1980. During the next twenty-two years, Mr. Carabajal continued to work for the same employer and did not seek additional benefits. In 2002, Mr. Carabajal suffered a reherniation at the same L5–S1 level while he was walking. The reherniation led to a fusion surgery in 2003 which was performed by Dr. Joseph Sramek. When asked his opinion regarding the relationship between the 1977 injury and the 2002 injury, Dr. Sramek testified, in pertinent part, as follows:

> I think—you know, I think the new problem was in some way related to the old problem, in that his original injury was there, and he had an already weakened disk from that. So I think it predisposed him to this. It's not directly attributable to a work-related injury, but his original injury, I think, made it more likely that this type of problem would occur in the future for him.
>
> . . .
>
> It's at the same—his new problem is at the same level that was injured back in 1977. Okay. He had surgery back in '79 by Dr. Metz at the same level. By virtue of hav-

ing an injury at that level and having surgery at that level, he had a higher predisposition to getting a recurrent injury at that same level, higher than the general population would have. Now, you can make the leap that this current injury, you know, probably wouldn't have occurred if he didn't have his original injury and original surgery. It may or may not have. He was definitely placed at a higher predisposition to having this type of problem happening.

When Dr. Sramek was asked whether he could say with any degree of certainty what actually caused the reherniation, Dr. Sramek testified, "Well, I mean, the current reherniation, no, other than the fact that he had a predisposition related to his previous injury."

[¶ 17] Based upon our holdings in *Pino* and *Yenne–Tully I* and the facts established by Mr. Carabajal, we conclude that Mr. Carabajal's claim should have been analyzed pursuant to the second compensable injury rule. The hearing examiner erred in determining the claim pursuant to Wyo. Stat. Ann. § 27–14–605.

> "Wyo. Stat. § 27–14–605 applies to original benefits awarded after a determination in favor of the employee. Medical benefits and temporary total disability benefits awarded at a later date pursuant to the second compensable injury rule are not among the benefits the statute controls."

*Yenne–Tully I*, 12 P.3d at 173 (quoting *Casper Oil Co. v. Evenson*, 888 P.2d 221, 225 (Wyo.1995)).

[¶ 18] The Division does not directly dispute the potential applicability of the second compensable injury rule to Mr. Carabajal's claim. It contends, however, that affirmance of the OAH decision is warranted because Mr. Carabajal failed to raise the second compensable injury rule as a theory of recovery at the hearing level.

[¶ 19] Mr. Carabajal concedes that the second compensable injury theory was not explicitly raised in the pleadings at the hearing level. He contends, however, that it was sufficiently raised to alert the hearing examiner to his theory of recovery. The Employee–Claimant's Unpaid Benefit List

filed January 22, 2003, with the OAH states, "[t]his is a 'coverage case' involving the relatedness of present back symptoms to the original injury which occurred approximately 23 years ago and, more particularly, the relatedness of surgery done in 2002 and 2003 to that original injury." Additionally, at the evidentiary hearing, Mr. Carabajal's counsel explained that the herniation occurred at the same level and location as the 1977 injury. He discussed the nexus between the 1977 injury and the 2002 injury and asserted that the previous injury "predisposed Mr. Carabajal to have another occurrence or a subsequent failure of the disk at that level and on that side."

[¶ 20] Our long-standing general rule is that "Wyoming appellate courts do not review issues raised for the first time on appeal. This rule is equally applicable to appeals from administrative decisions as to those from district courts." *Shaffer v. State ex rel., Wyo. Workers' Safety and Compensation Div.*, 960 P.2d 504, 507–508 (Wyo.1998) (quoting *Nelson v. Sheridan Manor*, 939 P.2d 252, 255 (Wyo.1997)). This Court takes "a dim view of a litigant trying a case on one theory and appealing it on another.... Parties are bound by the theories which they advanced below." *WW Enterprises, Inc. v. City of Cheyenne*, 956 P.2d 353, 356 (Wyo. 1998). However, we will "consider two types of issues raised for the first time on appeal: jurisdictional issues and 'issues of such a fundamental nature that they must be considered.'" *Brees v. Gulley Enterprises, Inc.*, 6 P.3d 128, 134 (Wyo.2000) (quoting *WW Enterprises, Inc.*, 956 P.2d at 356). Mr. Carabajal contends that application of the correct burden of proof is an issue of such fundamental nature that we must address it on the merits even if not directly raised below.

[¶ 21] In the context of the second compensable injury rule, we have recognized that the hearing examiner "has an obligation to invoke and apply the rules of law that support a claimant's theory of the case." *Pino*, 996 P.2d at 687. The information presented by Mr. Carabajal was sufficient to alert the hearing examiner to Mr. Carabajal's theory of the case so that he should have applied the second compensable injury rule. Our determination is in accord with our holding in *Pino:*

> We conclude that the hearing examiner failed to recognize that the issue before the agency was one of a second subsequent injury rather than simply one of proximate causation. Like a trial judge instructing a jury, the Office of Administrative Hearings has an obligation to invoke and apply the rules of law that support a claimant's theory of the case. It may be that this Court has explained the case in more detail and with more specificity than did Pino, but the fact remains that his theory of the case encompassed a second compensable injury. The hearing examiner should have invoked and applied the rule relied upon in the cited cases. Under the circumstances, the failure to do so constitutes a decision "not in accordance with law."

*Id.* Based upon the foregoing, we are not foreclosed from considering this issue on appeal.

[¶ 22] In its final argument, the Division contends that the decision should be affirmed on the basis that substantial evidence exists to deny benefits even if the second compensable injury rule is applied. The Division relies upon our decision in *Yenne–Tully II* in support of its position. The Division's reliance is misplaced. In *Yenne–Tully II* we affirmed the decision of the hearing examiner who applied the second compensable injury rule and determined that claimant had failed to meet his burden of proof under the rule. *Yenne–Tully II,* ¶ 14. The decision of the hearing officer in *Yenne–Tully II* was necessitated by our decision in *Yenne–Tully I.*

[¶ 23] In *Yenne–Tully I,* the hearing examiner erroneously failed to apply the second compensable injury rule and we reversed on the basis that the "[h]earing [e]xaminer incorrectly applied the burden of proof imposed by § 27–14–605." *Yenne–Tully I,* 12 P.3d at 173. We determined that the proper remedy was to remand for reconsideration by the hearing examiner. We stated:

> Having determined that the Hearing Examiner invoked the inappropriate burdens of proof, it is of no consequence whether those burdens were met. The

decision of the Hearing Examiner is reversed, and the case is remanded to the Office of Administrative Hearings for reconsideration in light of the second compensable injury rule.

*Id.* Here, we reach the same conclusion we reached in *Yenne–Tully I*.

[¶ 24] The hearing examiner erred as a matter of law in failing to consider the facts of this case under the second compensable injury rule. This case is reversed and remanded to the Office of Administrative Hearings for reconsideration of all the issues under the second compensable injury rule.